## Case No. 5,100.

### FRENCH v. FIRST NAT. BANK.

[8 Ben. 248.] [1]

District Court, S. D. New York. Oct. 1875.

S. L. Gardner, for complainant.
Peabody & Baker, for defendant.

BLATCHFORD, District Judge. The evidence shows that, at the close of business on the 5th of January, 1871, the bankrupt had a debit balance against him on the books of the defendant, of $1,868.35. On the 6th of January the defendants paid drafts drawn on them by the bankrupt, to the amount of $119.65. This made a debit balance against him on such books, of $1,988, at the close of business on the 6th of January. The defendants then wrote to him the letter of the 6th of January, which was sent to him by the special messenger, saying: "Your account with us is overdrawn about $2,000 and we have refused payment of about $3,000 more

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

of your drafts. It requires full $5,000 to make you good. If you are short of money, so that you cannot send that amount by the bearer, you must send by him some bonds, notes, &c., that we can make you a loan on and save you from further discredit." The special messenger, with this letter, left New York on the 6th and arrived at Sag Harbor the same evening. Meantime, on the 7th, after the messenger had left, a remittance of $1,115.94, which had been sent by the bankrupt to the defendants on the 5th, arrived, and was credited by the defendants to the bankrupt, in account, on the 7th. They also credited him on the same day with $589.52, as the proceeds of $533.50 gold. On the same day they paid drafts drawn on them by him to the amount of $150.32. This left a debit balance against him, on their books, at the close of business on the 7th, of $433.86. But, the testimony of the cashier of the defendants shows that they had in their custody on the 7th the item of $140, coupons, afterwards credited in account on the 11th, and the item of $533.41, Hunt, afterwards credited in account on the 14th. The bankrupt was, therefore, not really indebted to them at all at the close of business on the 7th. As the result of their sending the special messenger, he obtained at Sag Harbor, on the 7th, the package containing the items which he delivered to the defendants on the 11th, and which they credited in account on that day, at $1,527.39. Whatever might have been the proper conclusion, as to this $1,527.-39, if the bankrupt had not remitted the $1,115.94, which he did remit on the 5th, in the regular course of business, and which, on the evidence, must be regarded as having come to the hands of the defendants before the $1,527.39 was placed in the hands of the messenger, it is apparent that the $1,527.39 came to the hands of the messenger at a time when the bankrupt was not indebted to the defendants, but when they were liable to respond to him for the sum of $239.55. They subsequently responded to him for the $1,527.39 and the $239.55, and for a further item of $35 collected for his account on the 18th, being a total of $1,801.94.

I see, therefore, nothing in the transaction as to the $1,527.39 which the plaintiff can impeach as in violation of the provisions of the bankruptcy act. All the other remittances made by the bankrupt to the defendants appear to have been made in the ordinary course of business dealings between the parties, and there is no evidence of any intent on the part of the bankrupt, in respect to them, to give any preference to the defendants, even though at times his account may have been overdrawn, because he was constantly drawing on them and they were constantly paying drafts of his and receiving remittances from him, and they paid ten drafts of his after the 7th of January, namely, five on the 9th, two on the 14th, two on the 17th and one on the 18th. The bill must be

dismissed, but, under the circumstances, without costs.